[816 NYS2d 424]

Develop Don't Destroy Brooklyn et al., Respondents-Appellants, v Empire State Development Corporation, Appellant-Respondent, and Forest City Ratner Companies, Respondent.

First Department, May 30, 2006

## APPEARANCES OF COUNSEL

*Skadden, Arps, Slate, Meagher & Flom LLP*, New York City (*Douglas M. Kraus* and *Angela G. Garcia* of counsel), for appellant-respondent.

*Young, Sommer, Ward, Ritzenberg, Baker & Moore, LLC*, Albany (*Jeffrey S. Baker* of counsel), for respondents-appellants.

*Kramer Levin Naftalis & Frankel LLP*, New York City (*Jeffrey L. Braun, Richard G. Leland* and *Kerri B. Folb* of counsel), for respondent.

*Judy Rein*, Brooklyn, for Council of Brooklyn Neighborhoods, amicus curiae.

*Lynn Armentrout*, New York City, for New York City Councilwoman Letitia James and others, amici curiae.

*Randall L. Rasey*, New York City, for New York Public Interest Research Group, amicus curiae.

WILLIAMS, J.

The primary question raised upon this appeal is whether the motion court's disqualification of counsel for respondent Empire State Development Corporation (ESDC) due to the "appearance of impropriety" was proper. We conclude that it was not.

In December 2003, respondent Forest City Ratner Companies (the developer) announced its proposed redevelopment of the Atlantic Terminal area of Brooklyn. The Atlantic Yards Arena and Redevelopment Project (the Project) would encompass 22 underdeveloped acres that includes several blocks of occupied residential and commercial structures and eight acres of the Metropolitan Transportation Authority's Vanderbilt Yards, a below-grade, open-air storage area for buses and Long Island Railroad cars. The Project, among other things, would include a multiple-use arena (up to 20,500 seats) for the NBA's New Jersey Nets, public space, and approximately nine million square feet of office, commercial and residential space (7,300 residential units, 2,250 of which would be affordable rental housing), some of which would be built upon a permanent platform constructed over the Vanderbilt Yards that would ameliorate the isolating effect of the Yards on the surrounding neighborhoods.

ESDC is the lead government agency on the Project. The primary mission of this agency is to encourage economic investment throughout New York State, and it does so in part by promoting large-scale real estate projects that create and retain jobs and/or reinvigorate distressed areas. In furtherance of its mission, ESDC has powers of condemnation and to override local zoning ordinances.

Prior to approval, the Project must comply with the State Environmental Quality Review Act ([SEQRA] ECL art 8). The environmental review process began with ESDC's issuance, on September 16, 2005, of a "Combined Notice of Proposed Lead Agency Designation, Public Scoping and Intent to Prepare a Draft Environmental Impact Statement" (Positive Declaration) for the Project. This document announced ESDC's determination that the proposed project was a "Type I" action within the meaning of SEQRA and its regulations, and that ESDC would act as the lead agency in preparing the environmental impact statement (EIS) for the Project. ESDC simultaneously issued a "Draft Scope of Analysis for an Environmental Impact Statement" (Draft Scoping Document). ESDC held a public hearing on October 18, 2005 to obtain comments on the Draft Scoping Document.

The next step in the process, after consideration of the public's comments, will be ESDC's revision of the Draft Scoping Document and issuance of a final scope of analysis for an environmental impact statement (the Final Scoping Document), which will determine the issues, and the methodologies for analyzing those issues, to be addressed in the EIS. The Final Scoping Document is preliminary to an exhaustive analysis of the potential environmental impact of the Project. Thereafter, ESDC will prepare and disseminate to the public a draft EIS, and will hold one or more public hearings to obtain comments on that draft regarding issues such as the adequacy of its examination of potential environmental impacts and its proposals for addressing such impacts. Subsequently, a final EIS will be issued, which is subject to judicial review.

ESDC's outside counsel for the Project's environmental review process is David Paget, a member of Sive, Paget & Riesel, P.C., who is considered one of the foremost environmental lawyers in the nation. He is an expert in the preparation of environmental impact statements for large, complex projects pursuant to federal, New York State and New York City environmental law. He has been ESDC's environmental counsel on a wide variety of major projects for nearly 30 years.

In December 2003, the developer retained Paget as outside environmental counsel for the limited purpose of aiding it in negotiating the environmental review process. Its primary outside counsel for the Project is the firm of Fried Frank Harris Shriver & Jacobson LLP, which has represented it in all Project-related negotiations, including those with ESDC and other government agencies. ESDC approved of the developer's retention of Paget, but as Paget made clear in a February 2004 meeting with representatives of the developer and Fried Frank, ESDC was likely to retain him for purposes of the environmental review process if it became the lead agency on the Project; indeed ESDC had expressed such intent. The developer understood and agreed, and shortly thereafter entered into an initial cost reimbursement agreement with ESDC in connection with the Project wherein the developer would pay certain costs incurred by the agency and ESDC would authorize and/or oversee certain services to be rendered on the Project, including legal services to be rendered by Paget's firm regarding the environmental analysis. Subsequently, as of October 1, 2005, ESDC retained Paget, by written agreement, for purposes of the Project's environmental review process, and as of that date,

Paget ceased representing the developer on the Project and has represented ESDC only.

In 2004, as the developer began acquiring buildings in the Project "footprint" area, it was aware that some of those buildings were in poor condition and could only be preserved, if at all, at great cost. Early in 2005, the developer's senior vice-president for commercial development compiled a list of properties delivered or to be delivered to it vacant and that appeared to be so dangerously dilapidated as to warrant demolition. This determination was based upon his personal inspection of the premises and was made in consultation with an environmental consulting firm, AKRF, Inc. The developer also retained LZA Technology, a structural engineering consulting firm, to inspect the buildings and make recommendations regarding demolition. By spring 2005, LZA had prepared a report on each of the buildings it inspected and determined that some of those on the senior vice-president's list did not in fact require demolition. The developer decided not to demolish those buildings. However, discussions arose whether, as to five of the buildings LZA determined should be demolished, demolition could be accomplished without an environmental review process by ESDC. Paget advised that the only way the review process could be avoided and demolition could occur before completion of the EIS would be if the demolition could be properly designated a Type II action, i.e., that the buildings posed an immediate danger to the public. Type II actions are not subject to review because they "have been determined not to have a significant impact on the environment or are otherwise precluded from environmental review under Environmental Conservation Law, article 8" (6 NYCRR 617.5 [a]), and include:

> "emergency actions that are immediately necessary on a limited and temporary basis for the protection or preservation of life, health, property or natural resources, provided that such actions are directly related to the emergency and are performed to cause the least change or disturbance, practicable under the circumstances, to the environment. Any decision to fund, approve or directly undertake other activities after the emergency has expired is fully subject to the review procedures of this Part" (6 NYCRR 617.5 [c] [33]).

The developer decided to seek an ESDC determination as to whether such an emergency demolition was warranted. Its

November 2, 2005 presentation to ESDC was followed by an updated report from LZA, which reiterated that the five buildings should be demolished on an emergency basis. ESDC's Director of Planning and Environmental Review issued an emergency declaration on December 15, 2005, authorizing emergency demolition pursuant to 6 NYCRR 617.5 (c) (33) as a Type II action not subject to SEQRA review. In the declaration and in her affidavit, the Director stated that her decision was based upon her previous tour of the project site where she saw "a number of vacant, boarded-up, and deteriorated buildings that did not have landmark designation or other historical significance," her awareness that such buildings present great risk to public health and safety for a variety of reasons, her discussions with ESDC senior staff and outside environmental counsel (Paget's firm), and the graphic visual evidence of hazardous conditions submitted at the presentation and in the LZA report, such as "cracked bearing walls, deteriorated roofs and flooring, and degraded floor joists and timbers."

As a result of the issuance of the declaration, petitioners, who are various neighborhood organizations and individuals who live in or near the Project area, brought a CPLR article 78 proceeding against ESDC and the developer by order to show cause dated January 19, 2006. The verified petition, in seeking, inter alia, a preliminary injunction, asserted two causes of action against ESDC. First, it sought annulment of the declaration as arbitrary and capricious, alleging that its issuance violated SEQRA because ESDC accepted without any independent review the developer's representations as to the condition of the buildings, and that ESDC also failed to consider whether there were reasonable measures other than demolition that may have been taken. It also sought to enjoin demolition of the buildings pending independent engineering assessments of their conditions and determinations made on that basis as to whether demolition is necessary to protect public health and safety. Secondly, the petition sought the disqualification of Paget and his firm from representing either ESDC or the developer on the Project due to "an irreconcilable conflict of interest." It alleged that Paget and his firm's representation of first the developer and later ESDC on the Project, in addition to their continued representation of the developer on other matters, "undermines public confidence and the expectation that ESDC will undertake an objective review of the Project."

The court denied petitioners' motion for a temporary restraining order and set an expedited briefing schedule for their mo-

tion for a preliminary injunction, and respondents made cross motions attacking the petition. Subsequently, the court denied the motion for a preliminary injunction, finding that petitioners failed to demonstrate ESDC's declaration was arbitrary and capricious or an abuse of discretion, and that the declaration was supported by the record. However, it granted the petition to the extent of disqualifying Paget from representing ESDC, enjoining ESDC from taking further action until new counsel was retained, and ordering ESDC to retain new counsel within 45 days. The court found that ESDC retained Paget in February 2005 after the developer retained him in December 2003, and that the resultant simultaneous representation constituted prima facie evidence of a conflict of interest. The court also found that Paget failed to assert or demonstrate there would be no actual or apparent conflict in loyalties or diminution in the vigor of representation of both respondents.

The motion court misapprehended material facts and misapplied the applicable law in granting the petition to the extent of disqualifying Paget and his law firm from representing ESDC. The court erroneously found that a prima facie conflict of interest existed due to Paget's and his firm's alleged *simultaneous* representation of the developer and ESDC in this matter, and that the resulting appearance of impropriety warranted disqualification. Initially, petitioners had no standing to seek disqualification since they did not claim, nor had there ever been, an attorney-client relationship between the attorney/law firm and petitioners. "[I]f there is no duty owed there can be no duty breached" (*Rowley v Waterfront Airways,* 113 AD2d 926, 927 [1985]; *see also Saftler v Government Empls. Ins. Co.,* 95 AD2d 54, 57 [1983]). Their recourse for protecting the public interest in the SEQRA review process is the statutory provision for public participation in the drafting and finalizing of the EIS (*see* ECL 8-0109), as well as review of ESDC's final determination via a CPLR article 78 proceeding or other appropriate legal action.

Furthermore, the court erred in finding that a prima facie conflict of interest existed due to Paget and his firm's alleged *simultaneous* representation of the developer and ESDC in this matter. The record indisputably shows that the representation was *consecutive* in that the firm represented the developer in this matter from December 2003 through September 2005, at which time, upon due notice to all concerned, he ceased that representation and assumed representation of ESDC in this

matter in October 2005. The only *simultaneous* representation occurred when counsel assumed representation of ESDC in this matter and his firm continued its representation of the developer on two other minor matters, unrelated in any way to the Project or to ESDC. Nevertheless, the court, relying on the cost reimbursement agreement between ESDC and the developer dated February 2004 (not 2005, as the court stated) regarding legal services to be provided by the law firm on the environmental issues of the Project, based its analysis upon Code of Professional Responsibility DR 5-105 (22 NYCRR 1200.24 ["Conflict of interest: simultaneous representation"]) instead of DR 5-108 (22 NYCRR 1200.27 ["Conflict of interest—former client"]).

These errors notwithstanding, the court still should have found that even under the appropriate disciplinary rule, i.e., DR 5-108, no conflict of interest exists. The latter rule provides, in relevant part, that "a lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure . . . , represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." (DR 5-108 [a] [1].) A party seeking disqualification of its opponent's counsel under this provision must prove that there was an attorney-client relationship between the moving party and opposing counsel, the matters involved in both representations are substantially related, and the interests of the present and former clients are materially adverse (*see Jamaica Pub. Serv. Co. v AIU Ins. Co.*, 92 NY2d 631, 636 [1998]; *Solow v Grace & Co.*, 83 NY2d 303, 308 [1994]). Since each of these factors must be present to warrant disqualification (*Tekni-Plex, Inc. v Meyner & Landis*, 89 NY2d 123, 132 [1996]), and petitioners never had an attorney-client relationship with ESDC's counsel, disqualification was clearly unwarranted here pursuant to DR 5-108.

A similar outcome results when the circumstances are properly analyzed pursuant to DR 5-105, the applicable rule under the motion court's mistaken analysis, which states in relevant part:

> "(a) A lawyer shall decline proffered employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under [DR 5-105 (c)].

"(b) A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under [DR 5-105 (c)].

"(c) In the situations covered by [DR 5-105 (a) and (b)], a lawyer may represent multiple clients if a disinterested lawyer would believe that the lawyer can competently represent the interest of each and if each consents to the representation after full disclosure of the implications of the simultaneous representation and the advantages and risks involved."

Since, as the record shows, the only simultaneous representation here involves totally unrelated cases (the Project versus two small matters that do not involve ESDC or Paget), there was no prima facie showing of a conflict and no apparent likelihood that counsel's exercise of independent professional judgment on behalf of ESDC would be adversely affected or that counsel would be involved in representing differing interests (*see Asset Alliance Corp. v Ervine*, 279 AD2d 365 [2001], *lv dismissed* 96 NY2d 792 [2001]; *cf.* Code of Professional Responsibility EC 5-15 ["Simultaneous representation in unrelated matters of clients whose interests are only generally diverse, such as competing economic enterprises, does not by itself require consent of the respective clients"]).

The motion court also erred in ignoring record evidence that ESDC and/or the developer had duly waived their rights as to potential conflicts of interest in accordance with either DR 5-105 or DR 5-108. As the language cited above indicates, both rules contain waiver provisions that allow an attorney or firm to represent clients with conflicting interests in the same or substantially related matters, provided the affected client or clients consent to the representation after full disclosure. With respect to DR 5-108, the record evidence includes the sworn affidavit of an officer of the developer/affected former client wherein he states that the developer had "no objection whatsoever to the representation of ESDC by Mr. Paget and his firm in connection with the Project." With respect to DR 5-105, the record evidence, including affidavits by ESDC's house counsel and Paget in addition to the developer's officer's affidavit, shows, as noted

above, that a disinterested lawyer would find that any simultaneous representation would clearly involve no conflict, and that ESDC and the developer both consented to such representation after full disclosure and with full understanding of any risks, advantages and implications. Also, it should be noted that both the developer and ESDC are highly sophisticated entities with their own in-house counsel in addition to using outside counsel other than Paget (*cf. St. Barnabas Hosp. v New York City Health & Hosps. Corp.*, 7 AD3d 83, 93 [2004]).

Even if the court had been correct in perceiving a prima facie showing of conflict, however, it was nonetheless error to summarily disqualify respondent's counsel. Counsel should have been given the opportunity to show, "at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation" (*Cinema 5 Ltd. v Cinerama, Inc.*, 528 F2d 1384, 1387 [2d Cir 1976]). In addition, the court failed to comply with the dictate of CPLR 7804 (f) insofar as it requires that if a motion to dismiss is denied, "the court *shall* permit the respondent to answer, upon such terms as may be just" (emphasis added). Instead, the motion court, having denied ESDC's cross motion to dismiss petitioners' claim for disqualification of counsel, also erroneously denied it this statutorily mandated opportunity to demonstrate that its counsel was not compromised by conflicted interests.

Finally, the motion court erred in finding that the "appearance of impropriety" warranted disqualification of Paget as ESDC's environmental counsel. In doing so, the court ignored three basic principles of law on this subject: that if the representation does not violate another ethical or disciplinary rule, there can be no appearance of impropriety (*see Bennett Silvershein Assoc. v Furman*, 776 F Supp 800, 806 [US Dist Ct, SD NY 1991]); that the mere appearance of impropriety alone is insufficient to warrant disqualification (*see id.; People v Herr*, 86 NY2d 638, 641 [1995]; *Matter of Stephanie X.*, 6 AD3d 778, 780 [2004]; *First Hudson Fin. Group, Inc. v Martinos*, 11 Misc 3d 394, 397 [2005]); and that the appearance of impropriety must be balanced against a party's right to the counsel of its choice as well as the possibility that the motion for disqualification may be motivated purely by tactical considerations (*Jamaica Pub. Serv. Co.*, 92 NY2d at 638; *Solow*, 83 NY2d at 310).

Since, as discussed above, no disciplinary rule was violated or, in any event, such violation was waived by the respondents, the alleged conflict of interest did not provide a basis for the

disqualification of counsel due to the appearance of impropriety. Consequently, absent such violation, the mere appearance of impropriety, standing alone, also was insufficient to warrant disqualification. Moreover, when the balancing test of *Jamaica Pub. Serv. Co.* is applied to the circumstances at bar, petitioners' concern that Paget's former representation of the developer and subsequently of ESDC might compromise the latter's ability to consider the Project fairly is outweighed decisively by competing considerations. First, petitioners have recourse, as noted above, to provide input into and, if necessary, to obtain judicial review of ESDC's determination. Second, as previously noted, Paget is ESDC's counsel of choice for numerous excellent and undisputed reasons, and replacing such counsel on short notice would be very difficult. Third, it seems clear that petitioners intended the disqualification motion as a significant tactical maneuver in their campaign against the Project (*see* N. Confessore, *Demolition Can Proceed for Brooklyn Arena Project,* New York Times, Feb. 15, 2006, at B4; Press Release of Develop Don't Destroy Brooklyn Inc., *Empire State Development Corporation to Appeal Decision to Disqualify Conflicted Attorney David Paget from Review of Ratner's "Atlantic Yards,"* <http://www.developdontdestroy.org/litigation/ESDCAppealRelease 021606.php [Feb. 16, 2006]>, cached at <http://www.courts.state.ny.us/reporter/webdocs/develop_don't_ destroy_brooklyn.htm>).

Hence, for all of the aforementioned reasons, the disqualification of Paget and his firm from representing ESDC on the environmental review phase of the Project was error.

■ The remaining issue on this appeal is whether ESDC's "emergency declaration," which permits the developer to demolish certain buildings within the Project's "footprint" without undergoing state environmental quality review, was properly rendered. We find that the motion court properly granted respondents' motion to dismiss the petition insofar as it sought to annul the declaration. Petitioners' allegations that ESDC accepted the developer's representations of an imminent threat to public health and safety without any independent assessment of the claimed threat, and is allowing a change in the physical environment before the SEQRA process has been completed and without consideration of measures less drastic than demolition, are without merit and contrary to the record evidence, which was sufficient to make the determination (*see United States v City of New York*, 96 F Supp 2d 195, 208-209 [US Dist

Ct, ED NY 2000]; *Matter of Argyle Conservation League v Town of Argyle*, 223 AD2d 796, 798 [1996]). Moreover, petitioners fail to show that the subject buildings do not pose an emergency necessitating demolition, or that the developer's refusal to allow petitioners' engineer access to the subject buildings to inspect their condition was unlawful. Thus, the agency's emergency declaration was not arbitrary and capricious, but a reasonable exercise of discretion consistent with applicable law and with a rational basis in the record (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]; *District Council 37, Am. Fedn. of State, County & Mun. Empls., AFL-CIO v City of New York*, 22 AD3d 279, 283 [2005]). Finally, petitioners' contention that ESDC's decision process was tainted by Paget's alleged conflict of interest is without merit, in light of our finding that no such conflict of interest existed, and in any event, lacks a plain statement of a single, legally required step that the agency failed to take.

Accordingly, the order of the Supreme Court, New York County (Carol Edmead, J.), entered February 15, 2006, which, inter alia, granted respondents' motion to dismiss those parts of the petition seeking to annul an emergency declaration by ESDC, the lead government agency in the development of the Atlantic Yards Arena and Redevelopment Project in Brooklyn, that permitted respondent developer Forest City Ratner to demolish certain buildings within the Project "footprint" as unsafe without undergoing state environmental quality review, and granted the petition to the extent of disqualifying ESDC's counsel, David Paget, and his firm, from continuing to represent the agency in connection with the Project, and ordered ESDC to engage new counsel within 45 days, should be modified, on the law, to the extent that the petition is denied insofar as it seeks disqualification of Paget and his firm, and otherwise affirmed, without costs.

Motions seeking leave to file amicus curiae briefs granted.

ANDRIAS, J.P., SAXE, SULLIVAN and McGUIRE, JJ., concur.

Order, Supreme Court, New York County, entered February 15, 2006, modified, on the law, to the extent that the petition is denied insofar as it seeks disqualification of Empire State Development Corporation's counsel, David Paget, and his firm, and otherwise affirmed, without costs. Motions seeking leave to file amicus curiae briefs granted.