■ In the Matter of SAVE THE PINE BUSH, INC., et al., Appellants, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents. [734 NYS2d 267] —Mercure, J. Appeal from a judgment of the Supreme Court (Lamont, J.), entered October 31, 2000 in Albany County, which dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review a determination of respondent Department of Environmental Conservation granting respondent City of Albany a permit to expand a landfill.

In April 1999, respondent City of Albany applied to respondent Department of Environmental Conservation for permission to expand its existing Rapp Road landfill in the City's Pine Bush area, which the Department had previously classified as a principal aquifer. The expansion (hereinafter referred to as the Project) was proposed for a 23-acre parcel located east and southeast of the Albany Interim Landfill and north of the closed Greater Albany Landfill and consists of an immediate 11.5-acre vertical and horizontal expansion of the Greater Albany Landfill (hereinafter Phase One) and a 7.6-acre horizontal expansion scheduled to commence in 2005 (hereinafter Phase Two). Because current regulations prohibit the construction or expansion of a landfill over a principal aquifer (see, 6 NYCRR 360-2.12 [c] [1] [i]), the City's application included a request for a variance from the regulatory siting restrictions (see, 6 NYCRR 360-1.7 [c]).

Following the completion of environmental studies and public hearings on the proposal, the City revised its application and prepared a third supplemental final environmental impact statement addressing issues raised during the public comment period. The Department accepted the revised application and on February 29, 2000 issued a findings statement pursuant to the State Environmental Quality Review Act (ECL art 8), which concluded that "the standards for granting a variance

found in [6 NYCRR 360-1.7 (c)] have been met" with regard to the "variance request to construct the expansion area over a principal aquifer," and granted the permit. A month later, the City authorized commencement of the Project. The site was cleared by mid-April and principal construction commenced shortly thereafter.

On June 29, 2000, petitioners commenced this combined CPLR article 78 proceeding and declaratory judgment action to annul the Department's determination, primarily contending that the Department had no authority to grant the variance. Specifically, petitioners argued that because 6 NYCRR 360-2.12 (c) (1) (ii) contains its own variance procedure that expressly prohibits the operation of a landfill over a principal aquifer after December 31, 1995, the Department improperly employed the general variance provision of 6 NYCRR 360-1.7 (c), which cannot be utilized if a variance is "otherwise precluded by law."

Supreme Court concluded that, in view of the fact that Phase One had been more than half completed at a cost of approximately $8,300,000, petitioners' challenge to that phase of the Project was barred by the doctrine of laches. The court further concluded, however, that the doctrine of laches would not preclude a challenge to Phase Two because its level of completion was at that time insufficient to prejudice the City. Addressing the merits of the petition regarding Phase Two, Supreme Court determined that although 6 NYCRR 360-2.12 (c) (1) (ii) appeared on its face to preclude any landfill siting over a principal aquifer after December 31, 1995, the regulation could not be read in a vacuum and must be harmonized with the entire regulatory scheme for landfill siting. Relying upon the affidavit of Robert Phaneuf, the Department's environmental engineer who drafted the landfill siting regulations, Supreme Court determined that the variance procedure contained in 6 NYCRR 360-1.7 (c) is available for any siting restriction contained within 6 NYCRR part 360. Accordingly, the court held that petitioners' argument was lacking in merit and dismissed the petition. Petitioners appeal.

In our view, there is merit to the contention that the instant proceeding is barred by laches and that the appeal should be dismissed as moot. As a threshold matter, we reject petitioners' argument that, because neither of the respondents cross-appealed from Supreme Court's judgment, this Court lacks jurisdiction to consider the issue of laches as it relates to any aspect of the Project other than Phase One, on which respondents obtained a favorable ruling in Supreme Court. To the

contrary, the established rule is that "the successful party, who is not aggrieved by the judgment or order appealed from and who, therefore, has no right to bring an appeal, is entitled to raise an error made below, for review by the appellate court, as long as that error has been properly preserved and would, if corrected, support a judgment in [its] favor" (*Parochial Bus Sys. v Board of Educ.*, 60 NY2d 539, 545-546; *see, Town of Massena v Niagara Mohawk Power Corp.*, 45 NY2d 482, 488; *Matter of Nieves v Martinez*, 285 AD2d 410; *Panetta v Tonetti*, 182 AD2d 977, 978, *lv denied* 80 NY2d 756).

Respondents may therefore assert as an alternative ground for affirmance of Supreme Court's judgment that petitioners' delay in bringing the proceeding, prosecuting it to judgment and perfecting the present appeal constitutes laches and that the resulting prejudice to respondents warrants dismissal of the petition with respect to the entire Project. Our inquiry will therefore not be limited to post-permit expenditures directly relating to either Phase One or Phase Two but may include other expenditures, such as costs of remediation, that relate to the Project as a whole.

Now turning to the merits of the laches claim, "[i]t is well settled that where neglect in promptly asserting a claim for relief causes prejudice to one's adversary, such neglect operates as a bar to a remedy and is a basis for asserting the defense of laches" (*Matter of Stockdale v Hughes*, 189 AD2d 1065, 1067; *see, Matter of Schulz v State of New York*, 81 NY2d 336, 348; *Matter of Many v Village of Sharon Springs Bd. of Trustees*, 234 AD2d 643, *lv denied* 89 NY2d 811; *Ughetta v Barile*, 210 AD2d 562, 563-564, *lv denied* 85 NY2d 805; *Matter of Caprari v Town of Colesville*, 199 AD2d 705, 706). In our view, the facts of this case provide a compelling basis for invocation of the doctrine of laches. First, petitioners delayed their commencement and prosecution of the proceeding in Supreme Court and perfection of the appeal to this Court for as long as the law would possibly permit. Second, despite their knowledge of the City's ongoing work on the Project, petitioners at no time sought a stay or preliminary injunction. Third, respondents' uncontroverted evidentiary showing establishes that the City has expended or committed to expend over 70% of the entire cost associated with the Project.

The record establishes that, throughout the litigation, petitioners have exhibited a deliberate pattern of delaying or stalling the proceedings. First, petitioners waited until June 29, 2000, the last day of the four-month limitations period, to commence the proceeding and fixed an August 11, 2000 return

date on their notice of motion. The result was a delay of over five months from the issuance of the Project permit to Supreme Court's first opportunity to consider the merits of the proceeding.

Supreme Court issued its decision on October 25, 2000 and petitioners filed their notice of appeal on November 22, 2000. On February 9, 2001, the City moved to dismiss the appeal based on petitioners' failure to perfect it within the 60-day period prescribed therefor (see, 22 NYCRR 800.9 [a]). Although the City fixed the return date well enough in advance to provide petitioners with an opportunity to propose an acceptable voluntary schedule for perfecting the appeal, petitioners instead opposed the motion and requested an additional 45 days from the date of this Court's decision on the motion within which to perfect the appeal. By decision and order dated April 4, 2001, this Court granted petitioners' request but directed that the appeal would be dismissed unless it was perfected by May 18, 2001. Petitioners failed to meet even this deadline, and on May 18, 2001 they moved for an order further extending the time limit. The City opposed the motion and cross-moved to dismiss the appeal on the grounds of mootness or laches. This Court granted the motion and extended the time to perfect the appeal to June 22, 2001; although this Court denied the City's cross motion, it did so without prejudice to the City's right to raise the mootness and laches issues upon argument of the appeal.

At this point, a period of over 20 months has elapsed from the time the Project permit was issued on February 29, 2000. During that 20-month period, Phase One of the Project was completed and the Department issued a permit on March 7, 2001 giving the City full permission to operate that portion of the landfill. Additionally, the City has taken substantial steps toward satisfaction of a Department mitigation measure requiring the City to purchase the 60-acre Fox Run Estates mobile home park and dedicate the property to the Pine Bush. In that connection, the City has purchased that property at a cost of $3,200,000 and offered to provide residents of the mobile home park $25,000 in relocation benefits. By May 2001, the City had already executed 77 relocation agreements with tenants of the park, thereby obligating it to expend $1,925,000. Moreover, the City expended an additional $50,000 on water and sewer improvements necessary to keep the park operating while residents moved out.

In addition, the City has continued with planning for Phase Two and has contracted at a cost of approximately $1,500,000

to relocate the existing gas-to-energy facility on the site as well as other utility relocation work associated with the Project. That work was scheduled to be completed early this Fall. In addition, construction of Phase One included the relocation of certain leachate storage tanks that are actually on the Phase Two site. As part of this effort, leachate storage tanks were dismantled or cleaned, the area was compacted for the placement of new tanks and a concrete foundation and footings have been poured. As noted, the City has already spent or committed itself to spend approximately 70% of the total cost associated with the Project.

Also as earlier noted, petitioners have never sought a preliminary injunction with regard to work on the Project or a stay of enforcement of Supreme Court's judgment. In view of the extent of the delay caused by petitioners and prejudice sustained by the City in connection with the entire Project, we conclude that petitioners' challenge is barred by laches and rendered moot (see, *Matter of Save The Pine Bush v City of Albany*, 281 AD2d 832; *Matter of Save The Pine Bush v City Engr.*, 220 AD2d 871, *lv denied* 87 NY2d 807; *Matter of Save The Pine Bush v Cuomo*, 200 AD2d 859, *lv dismissed* 83 NY2d 884; *Matter of Friends of Pine Bush v Planning Bd.*, 86 AD2d 246, *affd* 59 NY2d 849). As a final matter, we note that petitioners make no claim that this matter falls within the exception to the mootness doctrine enunciated in *Matter of Hearst Corp. v Clyne* (50 NY2d 707, 714-715).

Cardona, P. J., Crew III, Carpinello and Lahtinen, JJ., concur. Ordered that the appeal is dismissed, as moot, without costs.