■ FTI CONSULTING, INC., Respondent, v PRICEWATERHOUSE-COOPERS LLP, Appellant. [779 NYS2d 56]—

Order, Supreme Court, New York County (Ira Gammerman, J.H.O.), entered on or about February 11, 2004, which, to the extent appealed from as limited by the brief, granted plaintiff a preliminarily injunction enjoining defendant from offering "Business Recovery Services" on new matters and found, without specifying a remedy, that the use of the words "Business Recovery Services" in the Internet advertising of defendant and related entities violated the marketing restriction to which the parties had agreed, unanimously affirmed, with costs.

Plaintiff effectively purchased defendant's Business Recovery Services (BRS) unit. The asset purchase agreement contained a restrictive covenant barring defendant, for a period of three years, from engaging in any business providing services in the United States "of the type" then offered by BRS. Inasmuch as it appears that subsequent to the closing of the asset purchase agreement, defendant continued to provide BRS-type services, plaintiff has shown a likelihood of prevailing upon the merits of its claim that the restrictive covenant was violated. While de-

fendant maintains that the agreement defines BRS business sufficiently narrowly to exclude from the definitional ambit the post-closing services at issue, the restrictive covenant's proscription unambiguously extends not only to BRS business, as defined in the agreement, but more broadly to the provision of any BRS-type services, and an unambiguous agreement must be enforced according to the plain meaning of its terms (*see W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]). The motion court also properly found, for the purposes of the motion, that the use of the term "BRS" in the marketing restriction clause of the asset purchase agreement could be interpreted as an abbreviated form of the term Business Recovery Services and that the complained-of Web pages fostered the impression that BRS-type services continue to be provided by all the firms in PricewaterhouseCoopers' global network, including defendant, in violation of the marketing restriction.

Defendant agreed that the restrictive covenants were "an essential part of the parties' bargain" and that a breach "could adversely affect both the value of the transaction and the goodwill of the Business." Nevertheless, there is evidence indicating that defendant, well after the closing, continued to tout its experience in the area of business recovery services, thus compromising the value of the goodwill sold to plaintiff. Under these circumstances, the Judicial Hearing Officer properly found that the agreement's breach entailed irreparable harm, the loss of goodwill not being readily quantifiable (*see Hay Group v Nadel*, 170 AD2d 398 [1991]).

While the record indicates that plaintiff had knowledge of defendant's position respecting the scope of the restrictive covenant long before this action was commenced, it appears that plaintiff required time to investigate the matter closely before deciding to litigate, and there is no showing that defendant changed its position as a result of any delay by plaintiff in seeking injunctive relief (*see id.*). Concur—Tom, J.P., Saxe, Sullivan and Friedman, JJ.