OPINION OF THE COURT
Lucy Billings, J.
This proceeding requires the court to determine what interests and injuries New York City’s Landmarks Preservation and Historic Districts Law protects, so as to confer standing for persons without a property or contractual interest in the landmark, which would confer standing absent the statutory protection. This determination in turn requires the court to ascertain whether, under the landmarks preservation statutes, it may recognize the types of interests and injuries the Court of Appeals has recognized as conferring standing under environmental preservation statutes. This court concludes that the controlling authority dictates recognition of similar interests and injuries, that otherwise the landmarks preservation statutes would provide no more rights than property or contractual interests would provide, and that one individual petitioner and the organizational petitioner of which he is a member show that they meet the requisite standards.
Petitioners seek to enjoin respondents Vornado Realty Trust, 510 Fifth Avenue LLC, 510 Fifth EAT LLC, Vornado Realty, LI] and VNO 510 Fifth LLC (Vornado respondents) from their partial demolition and remodeling of the Manufacturers Trust Company (MTC) Building, referred to as the iconic “glass house,” at 5th Avenue and 43rd Street in New York County. The building’s exterior was designated a landmark in 1997. Among its unique attributes are its transparency and seamless transition between its exterior and interior, providing a full view of its interior from the exterior, yet the interior was designated a landmark only recently, in February 2011. Only three months later, May 19, 2011, respondent New York City Landmarks Preservation Commission (LPC) issued a certificate of appropriateness under the Landmarks Preservation and Historic Districts Law (LPL) (Administrative Code of City of NY § 25-305) permitting alterations of the interior features, as well as less extensive alterations of the exterior features, that give the building its landmark status. Petitioners also seek to reverse or annul LPC’s issuance of that certificate of appropriateness. (CPLR 7803.)
*456 Insofar as the court does not grant the petition immediately, petitioners move for a preliminary injunction prohibiting the Vornado respondents from their partial demolition and remodeling of the MTC Building pending a final determination of the petition. (CPLR 6301, 6311 [1].) The Vornado respondents move to dismiss the petition based on petitioners’ lack of standing, laches, and failure to state a claim. (CPLR 3211 [a] [5], [7]; 7804 [f]; see CPLR 3211 [a] [3].) LPC cross-moves to dismiss the petition based on petitioners’ lack of standing. (CPLR 3211 [a] [7]; 7804 [f]; see CPLR 3211 [a] [3].)
I. Standing to Maintain this Proceeding
A. Petitioner Allison
In determining motions to dismiss based on lack of standing, the court accepts the allegations of the verified petition and petitioners’ affidavits as true. (Rhodes v Herz, 84 AD3d 1, 3 n 1 [1st Dept 2011]; Trustees of the Plumbers Local Union No. 1 Additional Sec. Benefit Fund v City of New York, 73 AD3d 530, 531 [1st Dept 2010]; Hammer v American Kennel Club, 304 AD2d 74, 78 [1st Dept 2003]; Shui Kam Chan v Louis, 303 AD2d 151, 152 [1st Dept 2003].) On these bases, among the individual petitioners, Professor Eric Allison alone shows his standing to maintain the petition’s claims, because Allison has taken distinct advantage of the landmarked site, differently from the public at large. (Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d 297, 305-306 [2009]; Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 774 [1991]; Matter of Citizens Emergency Comm, to Preserve Presero, v Tierney, 70 AD3d 576 [1st Dept 2010].) He regularly visits and leads walking tours to the MTC Building to teach his architectural students about the unique qualities of the building as an American masterpiece of mid-twentieth century modernism exemplifying the International Style. He emphasizes the transparency and integration of the exterior and interior through their uninterrupted plate glass expanses and coordinated design. (Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d at 305.)
Because the MTC Building’s interior is fully visible from the exterior, rendering the exterior indistinguishable from the interior, a significant feature supporting the landmark status of each, the interior as well as the exterior is an urban environmental resource viewed primarily from the outside. Thus Allison’s tours to the building, even if to view it only from the exterior, encompass use, study, and enjoyment of the interior as well.
*457 Petitioner need not reside or work near the landmarked site to maintain standing. (Id.; Matter of Brunswick Smart Growth, Inc. v Town of Brunswick, 73 AD3d 1267, 1268 [3d Dept 2010].) The observable, palpable modifications respondents have proposed and permitted will directly curtail Professor Allison’s professional use and enjoyment of the unique site integral to his teaching and course of study: his profession. (Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d at 305; Society of Plastics Indus. v County of Suffolk, 77 NY2d at 775; Matter of Citizens Emergency Comm, to Preserve Preserv. v Tierney, 70 AD3d 576 [2010].)
B. The Standards Supporting Allison’s Standing
Although Matter of Save the Pine Bush, Inc. v Common Council of City of Albany (13 NY3d 297 [2009]) addresses protection of a natural rather than an architectural resource under the State Environmental Quality Review Act (SEQRA) (ECL 8-0101-8-0113), landmark preservation could not be more closely analogous to SEQRA. Both the LPL and SEQRA address preservation of the environment; the LPL preserves the urban environment; and SEQRA specifically includes “objects” (ECL 8-0105 [6]) and “resources of . . . historic or aesthetic significance” in the definition of the environment to be preserved. (6 NYCRR 617.2 [1].) While common, undefined interests in the environment may not confer standing to challenge an environmental injury, injury to a particular petitioner’s aesthetic and environmental well-being, activities, or pastimes and his “desire to use or observe . . . , even for purely esthetic purposes, is undeniably a cognizable interest” for purposes of standing. (Lujan v Defenders of Wildlife, 504 US 555, 562 [1992]; see Friends of Earth, Inc. v Laidlaw Environmental Services [TOC], Inc., 528 US 167, 183 [2000]; Sierra Club v Morton, 405 US 727, 734 [1972]; Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d at 305; Matter of Save Our Main St. Bldgs. v Greene County Legislature, 293 AD2d 907, 909 [3d Dept 2002].)
Since Matter of Save the Pine Bush, Inc. v Common Council of City of Albany (13 NY3d 297 [2009]), its standards have been employed to assess standing specifically under the LPL: “In environmental or preservation matters, standing may be established by proof that agency action will directly harm the petitioner’s members in their use or enjoyment of the natural resources or area in question.” (Matter of Citizens Emergency *458 Comm. to Preserve Preserv. v Tierney, 70 AD3d 576, 576 [2010] [emphasis added].) Although Matter of Heritage Coalition v City of Ithaca Planning & Dev. Bd. (228 AD2d 862, 864 [3d Dept 1996]), well over a decade before Save the Pine Bush, held that educational use of a landmarked site did not confer standing, Save the Pine Bush’s standards now apply to standing under the LPL. (Matter of Citizens Emergency Comm, to Preserve Presero. v Tierney, 70 AD3d 576 [2010].)
The First Department’s application of Save the Pine Bush does cite Matter of Heritage Coalition v City of Ithaca Planning & Dev. Bd. (228 AD2d at 864), but only for the point that a petitioner needs more than a mere appreciation of and interest in preserving the protected historic or landmarked site to establish standing. Petitioner organization in Matter of Citizens Emergency Comm, to Preserve Preserv. v Tierney (70 AD3d at 576-577) failed to meet the requisite standard by showing that LPC’s action would directly affect the organization’s members “differently from any other members of the public” in their use or enjoyment of property being considered for landmark designation (id. at 577), the same standard the Third Department now applies for standing to challenge land use. (Matter of Brunswick Smart Growth, Inc. v Town of Brunswick, 73 AD3d at 1268; Matter of Save Our Main St. Bldgs, v Greene County Legislature, 293 AD2d at 909; see Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d at 305-306; Society of Plastics Indus. v County of Suffolk, 77 NY2d at 774.) In fact, directly to the contrary, the petition in Matter of Citizens Emergency Comm, to Preserve Preserv, v Tierney (70 AD3d at 577) alleged “that petitioner’s members and members of the public are similarly affected.” Matter of Save the Pine Bush, Inc. v Common Council of City of Albany (13 NY3d at 305) nevertheless accepts the relevance of educational uses to establish standing: the very criterion conferring standing was that the petitioners “use the Pine Bush for recreation and to study and enjoy” the site’s unique features. (See id. at 301.)
Standing is not so strict as to be “insuperable.” (Id. at 306.) If petitioners maintained a property, contractual, business, or financial interest in the MTC Building that was injured by its remodeling, that interest and injury would confer standing independently, regardless of the LPL. Therefore standing under the LPL must be based on an interest and injury beyond an impact on property, contractual, business, or monetary rights and interests. Matter of Save the Pine Bush, Inc. v Common *459 Council of City of Albany (13 NY3d 297 [2009]) defines the parameters of one such interest and injury, one within which petitioner Allison’s interest in preserving the landmarked MTC Building and an injury to the landmark’s aesthetic, architectural, and historical character and value, on which his professional teaching and course of study regularly focus, fits.
In stark contrast to the value and protection of property, contractual, business, or monetary rights and interests, the LPL specifically recognizes that improvements on real property,
“having a special character or a special historical or aesthetic interest or value and many improvements representing the finest architectural products of distinct periods in the history of the city, have been uprooted, notwithstanding the feasibility of preserving and continuing the use of such improvements . . . , and without adequate consideration of the irreplaceable loss to the people of the city of the aesthetic, cultural and historic values represented by such improvements . . . .” (Administrative Code § 25-301 [a].)
The “protection, enhancement, perpetuation and use of improvements” that “reflect elements of the city’s cultural, social, economic, political and architectural history” is “a public necessity” and among the LPL’s express purposes. (Id. § 25-301 [b].) Its salient companion purposes are to “foster civic pride in the beauty and noble accomplishments of the past” and “promote the use of . . . landmarks, interior landmarks . . . for the education, pleasure and welfare of the people of the city.” (Id.)
Professor Allison’s focus on the MTC Building’s aesthetic, architectural, and historic value as one of the finest products of modernism in the International Style from the mid-twentieth century unquestionably embodies the interest the LPL is intended to protect and perpetuate, quite apart from property, contractual, business, or financial interests. Any uprooting of the building’s value by failing to preserve it directly causes an irreplaceable loss to his civic pride in and professional use and study of the building as a beautiful, magnificent, and renowned accomplishment in the city’s cultural and architectural history. Nothing in the current record suggests that his use, study, and enjoyment of the MTC Building has been of less frequency, intensity, or duration than the petitioners’ visits to the Pine Bush or is otherwise distinguishable so as to negate his standing.
*460 Finally, essential elements of this challenge set it apart from Matter of Heritage Coalition v City of Ithaca Planning & Dev. Bd. (228 AD2d 862 [1996]), where the petitioners were “educators at Cornell’s College of Architecture, Art and Planning, who espouse a fond appreciation for Sage Hall and have managed to use the characteristics of the structure in their respective courses of instruction.” (Id. at 863.) This description alone indicates their having “managed to use the characteristics of the structure in their . . . courses” (id.) was not necessarily a use of Sage Hall itself, observed live, and was secondary to their appreciation for the building, which “does not rise to the level of injury different from that of the public at large for standing purposes.” (Id. at 864; see Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d at 305-306; Society of Plastics Indus. v County of Suffolk, 77 NY2d at 774; Matter of Citizens Emergency Comm. to Preserve Preserv. v Tierney, 70 AD3d at 576-577.)
Matter of Heritage Coalition v City of Ithaca Planning & Dev. Bd. (228 AD2d at 864) continues: “Nor does the use of a building as a demonstrative teaching tool constitute a ‘use’ sufficient to confer standing.” The court reached this conclusion for two reasons. (1) The diminution of the petitioner Ebert’s use of Sage Hall “as a teaching tool, is not, without more, within the zone of interest sought to be promoted or protected by .. . SE-QRA.” (Id. [emphasis added].) (2) “While neither Ebert nor her students will be able to ‘observe’ Sage Hall as it existed prior to being renovated, nothing about the project prohibits Ebert from continuing to teach about the architectural history of Sage Hall nor others from learning about same.” (Id.)
First, the court held that use of a building as a teaching tool by itself was insufficient. As set forth above, Professor Allison does allege much more. For example, he leads walking tours to the MTC Building; he teaches not just about its demonstrative qualities and architectural history, but about its unique qualities and unique place in architectural history. Most distinctively, the transparency and integration of the interior and exterior must be experienced through the live observation that the visits afford.
“These are in-depth study tours. . . . They focus heavily on . . . how a building or landscape affects the person experiencing it. Thus we discuss the statements that owners and architects were making and the impact on the streetscape and the passers by.” (Aff of Eric Allison 1i 4 [July 19, 2011].) The tours help students understand not only architectural histoiy, but also:
*461 “a key preservation concept: significance in the sense of the intrinsic values of a building making it worthy of preservation. ... to assess whether to protect it, to allow modifications, or to guide restorations.
“I also point out the communicative elements that make the design rather unique among International Style buildings, focussing especially on the front- and-center safe deposit vault door which very succinctly symbolizes financial and physical security and fulfills the function of the more traditional bank design which imparts that sense through heavy masonry architecture.” (Id. ¶¶ 4-5.)
In sum, the MTC Building is a “showcase” of “the promise of the early manifestation of the International Style as it remediated the principles of the Bauhaus.” (Id. ¶ 5.)
Such effects and such intensive study beyond architectural history were nowhere suggested in Matter of Heritage Coalition v City of Ithaca Planning & Dev. Bd. (228 AD2d 862 [1996]). Nor would the use of photographs, models, or textual descriptions to which the court’s conclusion there would relegate the petitioners suffice to carry on the experience and impact of Professor Allison’s visits. That conclusion reflects the petitioners’ failure to show their teaching and learning about Sage Hall’s architectural history would be curtailed through use of photographs, models, or textual descriptions as “teaching tools,” without live observation of the building.
Second, despite the inclusion of “objects” (ECL 8-0105 [6]) and “resources of . . . historic or aesthetic significance” (6 NYCRR 617.2 [1]) in the environment to be preserved under SEQRA and the close analogy between natural and architectural resources as components of the environment, the promotion and protection of landmarks under the LPL encompass its own purposes and values beyond SEQRA. In fact, had the petitioners in Matter of Heritage Coalition v City of Ithaca Planning & Dev. Bd. (228 AD2d 862 [1996]) sought protection of Sage Hall under the LPL, and the renovation significantly impaired their use, study, and enjoyment of the building’s landmark qualities, the petitioners may have secured the standing under the LPL that they could not secure under SEQRA, because the LPL provides further protection. The LPL’s recognition of “the finest architectural products of distinct periods” (Administrative Code § 25-301 [a]), protection of cultural and architectural elements of history, and promotion of “civic pride” in beautiful and noble *462 past accomplishments, of education, and of pleasure may have cast a net that captured actual injury to those petitioners’ use, study, and enjoyment of landmarked features. (Id. § 25-301 [b].)
C. The Other Individual Petitioners
Applying these standards, the membership of petitioners Farrelly and Nardin in the Columbia and Princeton University Clubs near the MTC Building does not confer standing. Although the club memberships give Farrelly and Nardin a reason to frequent the vicinity of the MTC Building, and they both take walks past the MTC Building, frequent proximity does not establish an injury different from the public at large. (Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d at 305.) They do not claim to have obtained their club memberships to facilitate visiting the landmark, or that they will cancel their memberships or that the memberships will be devalued due to modifications of the landmark. In fact Farrelly and Nardin do not even claim that they specifically visit the landmark, rather than merely walking past it because they have other reason to frequent the neighborhood.
Nardin’s claim that the owners of the publishing business of which he is the chief executive officer chose its location to be near the MTC Building does not support his standing. Neither Nardin’s employer nor any of the business’s owners is a party to this proceeding. Nardin does not claim to be an owner of the business or even that he was involved in its choice of location or that the location influenced his acceptance of employment there.
Petitioner Grünewald alleges only that he was actively involved in seeking landmark protection for the site. Although that course of action demonstrates his appreciation of and interest in the MTC Building, effects on mere appreciation and interest do not establish the injury essential to standing. (Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d at 305-306; Society of Plastics Indus. v County of Suffolk, 77 NY2d at 774; Matter of Citizens Emergency Comm. to Preserve Preserv. v Tierney, 70 AD3d at 576-577.) Grünewald does not allege his use of the site akin to Allison’s special use.
D. The Organizational Petitioner
Petitioner Citizens Emergency Committee to Preserve Preservation also establishes standing. At least one of the Citizens Emergency Committee’s members, Allison, a founder of the organization and member of its steering committee, *463 establishes standing. (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]; Society of Plastics Indus. v County of Suffolk, 77 NY2d at 775; Matter of Citizens Emergency Comm. to Preserve Preserv. v Tierney, 70 AD3d 576 [2010].) He alleges that his activity as a member of Citizens Emergency Committee reflects his special appreciation of and interest in the MTC Building’s architecture and transparency. Citizens Emergency Committee further alleges that its members opposed the Vornado respondents’ proposal to LPC to remodel the MTC Building and continue to oppose the demolition and construction now underway, demonstrating an active interest in preserving the building’s interior.
The activity and interest of Citizens Emergency Committee’s membership is thus representative of this petition’s claims to preserve the MTC Building as originally landmarked; in fact the claims here are entirely germane to the organization’s core purpose: to preserve preservation. (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d at 211; Rudder v Pataki, 93 NY2d 273, 278 [1999].) The organizational petitioner thus shows that it represents and will promote the interests and objectives the petition seeks to effect and maintains a stake in the petition’s adjudication. (Rudder v Pataki, 93 NY2d at 278; Matter of Transactive Corp. v New York State Dept. of Social Servs., 92 NY2d 579, 587 [1998]; Society of Plastics Indus. v County of Suffolk, 77 NY2d at 772, 775.) Finally, nothing indicates that the relief requested requires further participation of Citizens Emergency Committee’s individual members. (New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d at 211; Society of Plastics Indus. v County of Suffolk, 77 NY2d at 775.)
E. Conclusion
Consequently, the court denies respondents’ motion and cross motion to dismiss the petition by petitioners Allison and Citizens Emergency Committee to Preserve Preservation based on their lack of standing. The court grants the motion and cross motion to the extent of dismissing the claims by petitioners Farrelly, Nardin, and Grünewald. (CPLR 3211 [a] [7]; 7804 [f]; see CPLR 3211 [a] [3].) Since standing is not merely a pleading requirement, but is also an indispensable element of petitioners’ proof, if ultimately respondents establish that the sworn allegations of petitioners Allison and Citizens Emergency Committee are untrue or otherwise rebut them, the petition will fail. (Matter of Save the Pine Bush, Inc. v Common Council of *464 City of Albany, 13 NY3d at 306; see Lujan v Defenders of Wildlife, 504 US at 561.)
II. Laches in Commencing this Proceeding and Seeking Relief
The Vornado respondents, who claim petitioners’ laches, bear the burden to plead and prove laches. (Matter of Dreikausen v Zoning Bd. of Appeals of City of Long Beach, 98 NY2d 165, 173 n 4 [2002]; see CPLR 3018 [b]; Rosenthal v City of New York, 283 AD2d 156, 161 [1st Dept 2001]; Stassa v Stassa, 73 AD3d 1157, 1158 [2d Dept 2010]; Estate of Claydon v Ehring, 65 AD3d 723, 724-725 [3d Dept 2009].) Laches does not bar the petition, because petitioners did not unreasonably delay initiating their claims. (EMF Gen. Contr. Corp. v Bisbee, 6 AD3d 45, 54-55 [1st Dept 2004]; Cohen v Krantz, 227 AD2d 581, 582 [2d Dept 1996]; see Matter of Schulz v State of New York, 81 NY2d 336, 348-349 [1993]; Philippine Am. Lace Corp. v 236 W. 40th St. Corp., 32 AD3d 782, 784 [1st Dept 2006]; Bailey v Chernoff, 45 AD3d 1113, 1115 [3d Dept 2007]; Matter of Save The Pine Bush v New York State Dept. of Envtl. Conservation, 289 AD2d 636, 640 [2d Dept 2001].) To the contrary, Grünewald and Citizens Emergency Committee, through its membership, began to secure legal counsel and financial sponsorship for litigation expenses the day after the meeting on April 19, 2011, when LPC approved alteration of the MTC Building. Petitioners did not even wait until LPC issued its certificate of appropriateness a month later or until the Vornado respondents obtained the further requisite permit to begin demolition June 1, 2011. Petitioners proceeded diligently to retain attorneys; identify individual co-petitioners with comparable interests and concrete injury; and prepare, file, and serve a comprehensive, cogent, factually and legally supported petition and motion for an immediate injunction July 11, 2011. (Matter of Dreikausen v Zoning Bd. of Appeals of City of Long Beach, 98 NY2d at 172; see Matter of Citineighbors Coalition of Historic Carnegie Hill v New York City Landmarks Preserv. Commn., 2 NY3d 727, 728-729 [2004]; Bailey v Chernoff, 45 AD3d at 1115; Matter of Save The Pine Bush v New York State Dept. of Envtl. Conservation, 289 AD2d at 640.)
The Vornado respondents’ application of laches would limit the petition’s claims to petitioners who have retained attorneys readily at hand or have the resources to immediately retain the services of a law firm capable of instant, massive absorption and output. Petitioners were required neither to retain such capability nor to anticipate that the Vornado *465 respondents would contract for a rapid deadline for construction and proceed immediately to undertake demolition and construction. Respondents may not use their own urgencies and haste to insulate themselves from potentially meritorious claims. (See Matter of Citineighbors Coalition of Historic Carnegie Hill v New York City Landmarks Preserv. Commn., 2 NY3d at 729; Matter of Dreikausen v Zoning Bd. of Appeals of City of Long Beach, 98 NY2d at 172; Matter of Parkview Assoc. v City of New York, 71 NY2d 274, 282 [1988]; Matter of GRA V, LLC v Srinivasan, 55 AD3d 58, 62-63 [1st Dept 2008].)
Although laches may apply to delays shorter than a year (Matter of Schulz v State of New York, 81 NY2d at 348; Bailey v Chernoff, 45 AD3d at 1115), petitioners promptly sought a preliminary injunction against respondents’ construction (Matter of Dreikausen v Zoning Bd. of Appeals of City of Long Beach, 98 NY2d at 172), rather than waiting until it was complete or close to completion (Matter of Citineighbors Coalition of Historic Carnegie Hill v New York City Landmarks Preserv. Commn., 2 NY3d at 728-729; Bailey v Chernoff, 45 AD3d at 1115; Matter of Save The Pine Bush v New York State Dept. of Envtl. Conservation, 289 AuD2d at 640; Matter of Save the Pine Bush v City Engr. of City of Albany, 220 AD2d 871, 872 [3d Dept 1995]), or simply protesting the extent of the construction. (Matter of Dreikausen v Zoning Bd. of Appeals of City of Long Beach, 98 NY2d at 174; see Matter of Schulz v State of New York, 81 NY2d at 348-349.) In contrast, they sought the injunction even before the actual construction, as the Vornado respondents conceded at oral argument July 26, 2011, that in fact, even at that point, they still had not obtained the requisite construction permits that would allow them to proceed past the demolition phase. (See Matter of Dreikausen v Zoning Bd. of Appeals of City of Long Beach, 98 NY2d at 172; Rosenthal v City of New York, 283 AD2d at 161; Stassa v Stassa, 73 AD3d at 1158.)
Moreover, as long as the challenged modifications are capable of being undone without undue hardship, as the court’s temporary restraining order has assured here, the challenge may be maintained. (Matter of Dreikausen v Zoning Bd. of Appeals of City of Long Beach, 98 NY2d at 173; EMF Gen. Contr. Corp. v Bisbee, 6 AD3d at 55; FTI Consulting, Inc. v PricewaterhouseCoopers LLP, 8 AD3d 145, 146 [1st Dept 2004]; Rosenthal v City of New York, 283 AD2d at 161; see Matter of Citineighbors Coalition of Historic Carnegie Hill v New York City Landmarks Preserv. Commn., 2 NY3d at 729; Stassa v Stassa, *466 73 AD3d at 1158.) Even if respondents’ reliance on the certificate of appropriateness has caused substantial and irreparable harm, laches will not estop LPC from correcting a past error and enforcing the LPL, despite the harsh results, rather than continuing a judicially determined contravention of the law. (Matter of Parkview Assoc. v City of New York, 71 NY2d at 282; Matter of GRA V, LLC v Srinivasan, 55 AD3d at 61-62.) An increased potential loss to respondents over the time elapsed would not create an inequity that would justify denying petitioners injunctive relief to which they otherwise are entitled, especially where it is their only adequate remedy, and as long as a desire to inflict greater loss did not motivate any delay. (EMF Gen. Contr. Corp. v Bisbee, 6 AD3d at 55.)
The short, four-month statute of limitations applicable to this proceeding (CPLR 217 [1]) itself almost defies a laches defense. It ensures in the first instance against stale claims. (Matter of Greater N.Y. Health Care Facilities Assn. v DeBuono, 91 NY2d 716, 721 [1998]; New York City Health & Hosps. Corp. v Mc-Barnette, 84 NY2d 194, 206 [1994]; Solnick v Whalen, 49 NY2d 224, 232 [1980]; Rosenthal v City of New York, 283 AD2d at 159.) Even a “nine-month delay is simply too short to be so great or of such characteristics as to amount to a waiver or abandonment.” (EMF Gen. Contr. Corp. v Bisbee, 6 AD3d at 55 [internal quotation marks and citation omitted].) No reported controlling authority over the past 15 years or more, for example, has barred a petition for review of an administrative determination based on laches in commencing the proceeding when the statute of limitations had not expired. (See Matter of Save The Pine Bush v New York State Dept. of Envtl. Conservation, 289 AD2d at 640; Matter of Save the Pine Bush v City Engr. of City of Albany, 220 AD2d at 871-872.) Although that period is now close to expiration, respondents weighed the risk against their business incentive not to wait for that period to expire, but to proceed immediately, at their own risk, to undertake costly work, despite the obvious opposition by members of the public, including Grünewald and petitioner organization’s members, at LPC’s hearings and meetings. (E.g. Cohen v Krantz, 227 AD2d at 582-583; Ryan v Borg, 201 AD2d 550 [2d Dept 1994]; see Matter of Citineighbors Coalition of Historic Carnegie Hill v New York City Landmarks Preserv. Commn., 2 NY3d at 729; Matter of GRA V, LLC v Srinivasan, 55 AD3d at 62-63; Bailey v Chernoff, 45 AD3d at 1115.) Respondents continued the work despite petitioners’ motion for a pre *467 liminary injunction and its partial and potential further success.
The progression of demolition or construction well may affect the practicality of injunctive relief possible and the balance of hardships that warrants such relief. Nevertheless, respondents have not met their burden to plead and prove laches so as to set precedent and require dismissal of this proceeding seeking review of respondent LPC’s determination and challenging the Vornado respondents’ actions pursuant to it. (Rosenthal v City of New York, 283 AD2d at 161; Stassa v Stassa, 73 AD3d at 1158; Estate of Claydon v Ehring, 65 AD3d at 724-725.) Therefore the court denies their motion to dismiss the petition based on petitioners’ laches.
III. Standing to Enforce the LPL and Specifically the Certifícate of Appropriateness
A. The Statutory Enforcement Scheme
Administrative Code § 25-317.2 (a) authorizes LPC to issue orders to any person who appears to be in charge of or involved in work on a landmark to stop the work, upon a reasonable belief that work is being performed in violation of the LPL. LPC may request the assistance of the New York City Police Department or Department of Buildings in enforcing the orders. (Administrative Code § 25-317.2 [a] [2].) Administrative Code § 25-317.2 (c) authorizes LPC’s recovery of a $500 civil penalty for each day of noncompliance with its orders.
“Upon the violation of any provision” of the LPL, in addition to any violation of “any stop-work order,” “or whenever any person is about to engage in . . . any act or practice that may constitute a violation” of the LPL, LPC may request the City Corporation Counsel, and the Corporation Counsel is authorized, “to institute all necessary actions and/or proceedings to restrain, correct or abate such violation or potential violation, to compel compliance with such order and/or seek civil penalties.” (Id. § 25-317.2 [d] [1] [emphasis added].) The Corporation Counsel institutes these actions on behalf of the city and may seek provisional and injunctive as well as other relief. (Id. § 25-317.2 [d] [2].) In addition to enforcement by LPC, the Police Department, and the Department of Buildings, LPC may designate other city agencies to enforce any provisions of the LPL. LPC, the Police Department, the Department of Buildings, and other designated agencies all may do so either through the means specified above or by instituting criminal actions. (Id. § 25-317.2 [f].)
*468 The criminal penalties apply broadly: $500-$10,000 fines and 30 days to one year of imprisonment, depending on the violation, increasing upon repeated violations, and each day in violation a separate offense. (Id. § 25-317.) The civil penalties for violation of the LPL or an order based on specified provisions of the LPL may be even heavier: the property’s fair market value or twice the cost of replicating protected features, again increasing upon repeated violations, and each day in violation a separate offense. (Id. § 25-317.1.) The statutory scheme establishes administrative tribunals for recovery of these penalties. (Id. § 25-317.1 [b].)
B. Petitioners’ Claims
Where LPC has issued a certificate of appropriateness permitting demolition, reconstruction, or alteration of any part of a landmark, Administrative Code § 25-305 (a) (3) prohibits work in violation of the certificate. Petitioners seek specifically to enforce Administrative Code § 25-305 to remedy the Vornado respondents’ alleged violation of the certificate of appropriateness governing the MTC Building, by exceeding the work authorized, as well as to enforce all respondents’ compliance with various provisions of the LPL in the issuance and implementation of the certificate.
Although Administrative Code § 25-317.2 unquestionably authorizes LPC, city agencies, and the Corporation Counsel to enforce the LPL, including Administrative Code § 25-305, section 25-317.2 neither expressly includes nor expressly excludes a right of action to enforce the LPL by nongovernmental parties such as petitioners. Where a New York State or City statute neither provides nor forbids such a private right of action, it may be implied if (1) petitioners are “of the class for whose particular benefit the statute was enacted”; (2) “a private right of action would promote the legislative purpose”; and (3) “such a right would be consistent with the legislative scheme.” (Uhr v East Greenbush Cent. School Dist., 94 NY2d 32, 38 [1999]; Mark G. v Sabol, 93 NY2d 710, 719 [1999]; Sheehy v Big Flats Community Day, 73 NY2d 629, 633 [1989]; see CPC Intl. v McKesson Corp., 70 NY2d 268, 276 [1987]; Rhodes v Herz, 84 AD3d at 9; Hammer v American Kennel Club, 304 AD2d at 79.)
Determination of the second criterion in itself involves a two-part inquiry: (a) the legislature’s objective and then (b) whether a private right of action would promote that objective. (Uhr v East Greenbush Cent. School Dist., 94 NY2d at 38; Rhodes v *469 Herz, 84 AD3d at 10.) Even where the legislative objective is to benefit the whole population, here, for example, New York City, or at least a class that includes petitioners, and liability to private parties would encourage compliance with the legislation and deter unlawful conduct by respondents and other similar parties, a private right of action rests on the third, critical criterion. Thus, even where private enforcement would promote the statutory purpose, satisfying the second criterion, private enforcement still may be inconsistent with the statutory scheme, failing to meet the third criterion. (Uhr v East Greenbush Cent. School Dist., 94 NY2d at 39-40; Mark G. v Sabol, 93 NY2d at 720; CPC Intl. v McKesson Corp., 70 NY2d at 276-277; Rhodes v Herz, 84 AD3d at 10, 13; see Delgado v New York City Hous. Auth., 66 AD3d 607, 608 [1st Dept 2009].)
None of respondents contends that the first two criteria are not satisfied here. Petitioners, on the other hand, do not contest that Administrative Code §§ 25-317 to 25-317.2 impose their own “comprehensive” (Mark G. v Sabol, 93 NY2d at 720; Rhodes v Herz, 84 AD3d at 4) or “extensive” (Rhodes v Herz, 84 AD3d at 11) “potent official enforcement” mechanisms (Uhr v East Greenbush Cent. School Dist., 94 NY2d at 40), including “broad regulatory and remedial powers” to intervene and prevent violations of the LPL “at the first indication” of proscribed conduct and to institute administrative, civil, and criminal prosecution. (CPC Intl. v McKesson Corp., 70 NY2d at 277; see Rhodes v Herz, 84 AD3d at 5-6, 10-11; Hammer v American Kennel Club, 304 AD2d at 79-80; Frank v DaimlerChrysler Corp., 292 AD2d 118, 128 [1st Dept 2002].) Consistency with the LPL’s purpose includes consistency with this enforcement scheme. (CPC Intl. v McKesson Corp., 70 NY2d at 277.) Especially where the proscribed conduct constitutes a misdemeanor (Administrative Code § 25-317) and the legislation specifies the means for enforcing those provisions, it is entrusted to the law enforcement agencies, such as the Police Department and Corporation Counsel, and civil remedies such as injunctive relief ordinarily are unavailable to private parties to prevent criminal offenses. (Hammer v American Kennel Club, 304 AD2d at 79-80.)
Thus the court well might conclude that a right of action by private parties with different motivations and approaches from the official enforcement authorities may cause a divergent allocation of enforcement resources and disserve the goal of consistency (Uhr v East Greenbush Cent. School Dist., 94 NY2d at 40; Mark G. v Sabol, 93 NY2d at 720; Rhodes v Herz, 84 AD3d *470 at 10, 13), so that only those expressly authorized officials may seek remedies for violations of the LPL. (E.g. CPC Intl. v Mc-Kesson Corp., 70 NY2d at 277; Delgado v New York City Hous. Auth., 66 AD3d 607, 608 [2009]; Hammer v American Kennel Club, 304 AD2d at 80-81.) Yet the court equally may conclude that a private right of action coalesces smoothly with the statutory scheme; that an enforcement scheme’s capacity always may be increased; and that, especially given constraints on resources, an infusion of strength may be necessary for the statutes’ optimal operation. (Uhr v East Greenbush Cent. School Dist., 94 NY2d at 40; Rhodes v Herz, 84 AD3d at 13.)
The most significant party that might express a position on this critical issue has not voiced any viewpoint. Certainly, were LPC to take the position that a private right of action would supplement LPC’s implementation of the statutory scheme or enhance its effectiveness, that view would bear heavily on the court’s conclusion. Without that input, the court may not conclude that the LPL’s official enforcement mechanisms, however comprehensive and potent, do not accommodate a private right of action by petitioners, even to enforce Administrative Code § 25-305 to remedy an alleged violation of the certificate of appropriateness.
Regarding enforcement of respondents’ compliance with other provisions of the LPL in the issuance and implementation of the certificate, whether petitioners’ enforcement may interfere with the statutory scheme, precluding a private right of action, may be of little consequence here. (Uhr v East Greenbush Cent. School Dist., 94 NY2d at 40; CPC Intl. v McKesson Corp., 70 NY2d at 277; Rhodes v Herz, 84 AD3d at 10, 13.) Petitioners have instituted this proceeding pursuant to CPLR 7803, through which they may mandamus the LPC to perform any enforcement duty required of LPC under the LPL or New York City Charter § 3020. (CPLR 7803 [1].) If LPC has determined not to enforce the statutes or their implementing regulations, petitioners may claim that determination violated statutory or regulatory procedures; was arbitrary, irrational, or an abuse of discretion (CPLR 7803 [3]); or, based on the entire administrative record, was unsupported by substantial evidence. (CPLR 7803 [4]; see Frank v DaimlerChrysler Corp., 292 AD2d at 128.) Finally, petitioners similarly may claim that any other determination by LPC, such as issuance of the certificate of appropriateness for the MTC Building, violated statutory or regulatory procedures; was arbitrary, irrational, or an abuse of discretion *471 (CPLR 7803 [3]); or, based on the entire administrative record, was unsupported by substantial evidence. (CPLR 7803 [4].)
While these avenues provide petitioners a remedy even to enforce the certificate of appropriateness, the LPL also provides them a remedy to protect against violations of the statutes without seeking injunctive relief themselves. They may seek LPC’s imposition of civil or criminal penalties through a complaint to the LPC upon a reasonable belief that work is being performed in violation of the LPL. (Administrative Code § 25-317.2 [a]; Hammer v American Kennel Club, 304 AD2d at 80.) Again, if LPC determines that no such violation has occurred or for any other reason determines not to enforce the LPL, petitioners may seek judicial review of that determination pursuant to CPLR 7803 (1), (3), or (4). )(Frank v DaimlerChrysler Corp., 292 AD2d at 128.)
For the above reasons, at this juncture, the court denies the Vornado respondents’ motion to dismiss petitioners’ claims to enforce the Vornado respondents’ compliance with the certificate of appropriateness governing the MTC Building and to enforce all respondents’ compliance with the LPL in the issuance and implementation of the certificate. (CPLR 3211 [a] [7].) The court provides LPC an opportunity to express a position on whether private enforcement of the LPL may interfere with the statutory scheme that authorizes enforcement by LPC and companion governmental officials and agencies, but does not expressly grant them exclusive authority. (Uhr v East Greenbush Cent. School Dist., 94 NY2d at 40; CPC Intl. v McKesson Corp., 70 NY2d at 277; Rhodes v Herz, 84 AD3d at 10, 13.) Given the alternative avenues for relief outlined above, petitioners also may clarify the extent to which they rely on an implied private right of action. Respondents then may seek dismissal of petitioners’ enforcement claims in the ultimate determination of the petition. (CPLR 3212 [b]; 7806.)
IV Failure to State a Claim
The Vornado respondents further maintain that petitioners do not even state a claim that LPC’s issuance of the certificate of appropriateness for the MTC Building violated statutory or regulatory procedures; was arbitrary, irrational, or an abuse of discretion (CPLR 7803 [3]); or was unsupported by substantial evidence. (CPLR 7803 [4].) The survival of petitioners’ claim that LPC’s determination is unsupported by substantial evidence, according to CPLR 7803 (4)’s very terms, must depend on the entire administrative record. (CPLR 7804 [f]; Matter of *472 Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County, 63 NY2d 100, 102-103 [1984]; Matter of Camacho v Kelly, 57 AD3d 297, 298 [1st Dept 2008]; Matter of Albany Manor Inc. v New York State Liq. Auth., 57 AD3d 142, 144 [1st Dept 2008]; Develop Don’t Destroy Brooklyn v Empire State Dev. Corp., 31 AD3d 144, 153 [1st Dept 2006]; see Matter of Hemphill v New York City Hous. Auth., 272 AD2d 267 [1st Dept 2000].) While the Vornado respondents may attempt to show that, even based on the pieces of that record presented by the petition, substantial evidence supports LPC’s determination, what may appear substantial in a limited context may be insubstantial in the context of the record as a whole. (Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County, 63 NY2d at 102; Matter of Camacho v Kelly, 57 AD3d at 299; Matter of Albany Manor Inc. v New York State Liq. Auth., 57 AD3d at 145-146; Develop Don’t Destroy Brooklyn v Empire State Dev. Corp., 31 AD3d at 153.)
The same concern applies here to petitioners’ claims that LPC’s determination was arbitrary or irrational or violated statutory or regulatory procedures. (CPLR 7803 [3].) What may appear rational in a limited context may be rendered irrational when the record reveals abundant evidence directly to the contrary. (Matter of Camacho v Kelly, 57 AD3d at 299; Matter of Albany Manor Inc. v New York State Liq. Auth., 57 AD3d at 144; see Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County, 63 NY2d at 102.) While pieces of the record may comply with the applicable law, other parts may solidly support petitioners’ claims that LPC reached its determination through procedures and actions that violated the law. (Id.; Matter of Camacho v Kelly, 57 AD3d at 299; Matter of Albany Manor Inc. v New York State Liq. Auth., 57 AD3d at 146; Develop Don’t Destroy Brooklyn v Empire State Dev. Corp., 31 AD3d at 150, 153.)
For example, the Vornado respondents point out that LPC’s certification of their remodeling to enable their use of the previously unused MTC Building comports with Administrative Code § 25-301 (a)’s purpose of continuing a landmark’s use and section 25-301 (b)’s purpose of promoting use, purposes petitioners readily acknowledge. (See Administrative Code § 25-309 [a] [2] [c].) Yet the pieces of the record currently presented do not address such fundamental questions as:
why the remodeling was necessary to accommodate a retail clothing business as a tenant;
*473 why two tenants were necessary, in turn necessitating a division of the unified space and additional entrances, breaking up the uninterrupted facade, a significant feature supporting the landmark status;
why no other or single tenant, equally lucrative but requiring less remodeling, was interested in the first two floors at this highly desirable location; or
why the freestanding escalators running parallel to 5th Avenue must be moved, for the prospective tenant or any other tenant, their location representing another significant design component unifying the first and second floors.
Insofar as petitioners claim LPC’s determination does not answer these questions or otherwise adequately set forth its reasons for granting the certificate of appropriateness, the Vornado respondents rely on the extensive administrative process explaining why LPC granted the certificate. (Administrative Code § 25-315.) Without that administrative record, however, it is impossible to discern definitively whether it in fact shows substantial supporting evidence, rationality, and the absence of any violation of Administrative Code §§ 25-307, 25-308, 25-313, or 25-315, delineating the factors and procedures that govern issuance of the certificate and the contents of LPC’s determination. The current record does not even establish the precise document that constitutes the final determination. Nor may the court consider respondents’ affidavits or other evidence, even if in admissible form, to defeat petitioners’ claims upon a motion to dismiss them pursuant to CPLR 3211 (a) (7). (Lawrence v Graubard Miller, 11 NY3d 588, 595 [2008]; Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]; Leon v Martinez, 84 NY2d 83, 87-88 [1994]; Yoshiharu Igarashi v Shohaku Higashi, 289 AD2d 128 [1st Dept 2001].)
In sum, the court will not dismiss any claims on their merits before allowing respondents to answer. (CPLR 7804 [f]; Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County, 63 NY2d at 102-103; Matter of Camacho v Kelly, 57 AD3d at 298; Develop Don’t Destroy Brooklyn v Empire State Dev. Corp., 31 AD3d at 153.) First, the facts currently are not so fully developed and presented as to establish the absence of any factual dispute bearing on the claims. (CPLR 409 [b]; 7804 [h]; 7806; Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County, 63 NY2d at 102-103; Matter of Camacho v Kelly, 57 AD3d at 298; Develop Don’t Destroy Brooklyn v Empire State *474 Dev. Corp., 31 AD3d at 153.) Nor do the current facts permit a conclusion based on undisputed facts demonstrating (1) substantial evidence supporting LPC’s issuance of its certificate of appropriateness (CPLR 7803 [4]); (2) that LPC’s determination was rational; and (3) that LPC reached its determination through procedures and actions in full compliance with applicable law. (CPLR 7803 [3]; see CPLR 409 [b]; 7804 [f]; 7806; Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County, 63 NY2d at 102-103; Matter of Camacho v Kelly, 57 AD3d at 299; Matter of Albany Manor Inc. v New York State Liq. Auth., 57 AJD3d at 145-146; Develop Don’t Destroy Brooklyn v Empire State Dev. Corp., 31 AD3d at 150, 153.)
V Preliminary Injunction
Given that petitioners demonstrate at least one or more meritorious claims, and all the claims by petitioners Allison and Citizens Emergency Committee to Preserve Preservation survive dismissal at this juncture, the court converts its temporary restraining order dated July 26, 2011 to a preliminary injunction, for the reasons given in that prior decision and the reasons just stated. (CPLR 6301, 6311 [1]; 6312 [a]; Second on Second Café, Inc. v Hing Sing Trading, Inc., 66 AD3d 255, 271-272 [1st Dept 2009]; OraSure Tech., Inc. v Prestige Brands Holdings, Inc., 40 AD3d 413, 414 [1st Dept 2007]; FTI Consulting, Inc. v PricewaterhouseCoopers LLP, 8 AD3d at 146; Putter v Singer, 73 AD3d 1147, 1149 [2d Dept 2010].) The preliminary injunction shall be effective upon petitioners providing an undertaking or other security of $370,000 in favor of the Vornado respondents by August 31, 2011, at 5:00 p.m., or, if after that date, five business days after notice to respondents that petitioners have provided the required undertaking or security. (CPLR 6312 [b].) As this injunction is likely to be of less limited duration than the temporary restraining order, the five days will allow respondents, which understandably may not have sought to increase the undertaking while the injunction was not in effect, to seek an increase. Any request for an increase must be by a motion, which may be by an order to show cause, upon a showing, by admissible evidence, that the injunction will cause respondents more than a potential loss of one month’s net rental income, the basis for the current $370,000 requirement.
The preliminary injunction shall prohibit the Vornado respondents from undertaking demolition, removal, physical alteration, or other work affecting building components of the *475 first two floors of 510 5th Avenue, New York County, that is irreversible or incapable of restoration to the original condition with replacement materials identical to the original materials. If the materials are not replaceable, these respondents shall preserve the original materials for restoration to their original use or shall maintain them in place. The injunction does not apply to maintenance or repairs that do not alter the building’s structure or finishes.
The Vornado respondents have not demonstrated that this limited injunction will impose undue hardship on them (Waldbaum, Inc. v Fifth Ave. of Long Is. Realty Assoc., 85 NY2d 600, 607 [1995]; Second on Second Café, Inc. v Hing Sing Trading, Inc., 66 AD3d at 273); drastically upset the status quo (Putter v Singer, 73 AD3d at 1149); or materially interfere with their ability to undertake their remodeling and leasing of the MTC Building space. (Waldbaum, Inc. v Fifth Ave. of Long Is. Realty Assoc., 85 NY2d at 607; Second on Second Café, Inc. v Hing Sing Trading, Inc., 66 AD3d at 273.) Nevertheless, they have shown, without petitioners showing to the contrary, that this injunction is enough to protect against any immediate and irreparable injury to petitioners from the demolition and construction that respondents initiated. (CPLR 6301, 6312 [a]; Second on Second Café, Inc. v Hing Sing Trading, Inc., 66 AD3d at 271-272; OraSure Tech., Inc. v Prestige Brands Holdings, Inc., 40 AD3d at 414; FTI Consulting, Inc. v PricewaterhouseCoopers LLP, 8 AD3d at 146; Putter v Singer, 73 AD3d at 1149; see Waldbaum, Inc. v Fifth Ave. of Long Is. Realty Assoc., 85 NY2d at 607.)
VI. Disposition
To recapitulate, the court grants respondents’ motion and cross motion to the extent of dismissing the petition by petitioners Farrelly, Nardin, and Grünewald; otherwise denies the motion and cross motion; and grants petitioners’ motion for a preliminary injunction to the limited extent set forth above. (CPLR 3211 [a] [5], [7]; 6301, 6311 [1]; 6312 [a]; 7804 [f].) Respondents shall serve and deliver to the court at 71 Thomas Street, Room 204, any answer to the petition within 10 days after service of this order with notice of entry. (CPLR 3211 [f]; 7804 [f].) Petitioners shall serve and likewise deliver any reply within 10 days after service of an answer. (CPLR 7804 [d], [f].) The court then will schedule a further hearing on the petition to determine the extent of permanent relief to be granted.
In reaching this decision, the court has not considered any arguments or evidence offered after submission and oral argu *476 ment of the motions and cross motions, especially when all parties’ consent was not obtained as of the oral argument or even afterward. Any request for a modification of this decision, any claim of noncompliance with this decision, or any other request for relief must be by a motion, which may be by an order to show cause.
This decision constitutes the court’s order on petitioners’ motion for a preliminary injunction and respondents’ motion and cross motion to dismiss the petition.